UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ROY WERBERL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>PEPSICO, INC., a Northern California corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No:  C 09-04456 SBA<br><br>**AMENDED ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>[Supersedes Docket 25] |

Plaintiff Roy Werbel ("Plaintiff") brings the instant putative class action against Defendant PepsiCo, Inc. ("Defendant" or "Pepsico"), on behalf of consumers who allegedly were misled into believing that "Cap'n Crunch's Crunch Berries" cereal derives some of its nutritional value from real berries or fruit.  He alleges statutory violations under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof.Code § 17200, et seq., False Advertising Law ("FAL"), id. § 17500, et seq., and Consumer Legal Remedies Act ("CLRA"), Cal. Civ.Code § 1750, et seq., along with common law causes of action for intentional misrepresentation and breach of express and implied warranty.

The parties are presently before the Court on Defendant's Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6).  Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS Defendant's motion and dismisses Plaintiff's claims without leave to amend.  The Court, in its discretion, finds this matter suitable for resolution without oral argument.  See Fed.R.Civ.P. 78(b).

## I. BACKGROUND

### A. FACTUAL SUMMARY

In or about 1968, The Quaker Oats Company ("Quaker Oats"), now a unit of PepsiCo, began manufacturing and marketing a cereal known as Cap'n Crunch's Crunch Berries ("Cap'n Crunch"). (First Am. Compl. ("FAC") ¶ 2, Ex. B at 24.) As shown in fig. 1 below, the front display panel of the cereal box bears the product name, "Cap'n Crunch's Crunch Berries." Immediately below is a product description, which states: "SWEETENED CORN & OAT CEREAL." The display panel also depicts a ship's captain in cartoon form standing behind a bowl of cereal, and holding a spoonful of multi-colored Crunch Berries. (Id. ¶ 11.) Plaintiff alleges that "the colorful Crunchberries [sic] on the [cereal box], combined with the 'berry' in the Product name, conveys only one message: that Cap'n Crunch has some nutritional value derived from fruit." (Id. ¶ 12.)



**Figure 1** - Image of front and side display panel[1]

---

[1] This image is taken from Exhibit 1 to Defendant's Request for Judicial Notice.

In actuality, the Cap'n Crunch contains no berries and has no nutritional fruit content. Id. ¶ 15. Although the product contains "strawberry juice concentrate," that ingredient allegedly is for flavoring only. Id. ¶ 16. According to Plaintiff, the only reason that the front display panel on the Cap'n Crunch cereal box refers to "berries" is "to lead consumers to believe that the Product contains nutritional content derived from fruit." Id. ¶ 14. This message allegedly is "supplemental and reinforced by marketing which states plainly: 'Crunch Berries is a combination of Crunch biscuits *and colorful red, purple, teal and green berries.*'" Id. ¶ 13.

### B. PROCEDURAL HISTORY

The instant action is the third in a series of proposed class actions actions brought by Plaintiff's counsel against PepsiCo based on the theory that Cap'n Crunch's packaging deceives consumers into believing that the cereal contains or derives nutritional value from fruit. On April 19, 2007, the Hewell Law Firm, the lead counsel prosecuting this action, filed a lawsuit against PepsiCo in the Central District of California, styled as McKinness v. PepsiCo, Inc., Case No. 07 CV-2609 JFW. The district court dismissed the action on June 13, 2007, following plaintiff's failure to oppose defendant's Rule 12(b)(6) motion to dismiss.[2]

On June 9, 2008, the Hewell Law Firm, through a different class representative, filed a second class action complaint in the Eastern District of California against PepsiCo, again alleging that Cap'n Crunch's product packaging and marketing "lead consumers to believe the Product is made with real fruit content." See Sugawara v. Pepsico, Inc., U.S. District Ct., E.D. Cal., Case No. 08-1335 MCE. Plaintiff alleged statutory violations under the UCL, FAL, CLRA and causes of action for intentional misrepresentation and breach of express and implied warranty. On May 21, 2009, the district court granted PepsiCo's motion to dismiss, finding that a reasonable consumer would not be deceived into believing that Crunch Berries were

---

[2] On the same date, the same plaintiff, represented by the same counsel, filed a separate class action lawsuit against Kelloggs USA, alleging that "Froot Loops" cereal deceived consumers into believing that it contained actual fruit. The court dismissed plaintiff's claims for violation of the UCL, FAL, CLRA and CLRA, negligent misrepresentation, breach of express and implied warranty and unjust enrichment, with prejudice. See McKinnis v. Kellogg USA, 2007 WL 4766060 at *6 (C.D. Cal., Sept. 19, 2007).

derived from real fruit. <u>Id.</u>, 2009 WL 1439115 at *3 (E.D. Cal., May 21, 2009).  The court declined to grant leave to amend, noting that "survival of the instant claim would require this Court to ignore all concepts of personal responsibility and common sense." <u>Id.</u> at *5.

Rather than appealing the decision in <u>Sugawara</u>, plaintiff's counsel, under the name of a different class representative, filed a new class action against PepsiCo in this Court on September 22, 2009.  The First Amended Complaint ("FAC"), filed January 23, 2008, is virtually identical to the complaint filed in <u>Sugawara</u>.  As in that case, the FAC filed herein alleges six California state law causes of action for:  (1) violation of the UCL; (2) violation of the FAL; (3) intentional misrepresentation; (4) breach of express warranty; (5) breach of implied warranty; and (6) violation of the CLRA.[3]  Defendant now moves to dismiss the FAC in its entirety.

## II.   LEGAL STANDARD

A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory.  <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1990).  To survive a motion to dismiss, the plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  The pleadings must "give the defendant fair notice of what ... the claim is and the grounds upon which it rests."  <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) (internal quotation marks omitted).

When considering a motion to dismiss under Rule 12(b)(6), a court must take the allegations as true and construe them in the light most favorable to plaintiff.  See <u>Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit</u>, 507 U.S. 163, 164 (1993).  However, "the tenet that a court must accept as true all of the allegations contained in a

---

[3] The only substantive difference between this and the <u>Sugawara</u> complaint is that the FAC filed in the instant action now includes an allegation that in 1967, a trademark examiner, in the course of reviewing Quaker Oats' trademark application, commented that, "The word BERRIES is considered merely descriptive or deceptively misdescriptive of the goods here and should be disclaimed apart from the mark shown." (FAC ¶ 20 and Ex. B at 17.) Notwithstanding the examiner's remark, "Crunch Berries" was registered as a trademark by the United States Patent Office (now the Patent and Trademark Office) on June 25, 1968.  (Id. Ex. B at 38.)

complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949-50 (2009). "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." Id. at 1950. Those facts must be sufficient to push the claims "across the line from conceivable to plausible[.]" Id. at 1951 (quoting Twombly, 550 U.S. at 557).

## III. DISCUSSION

### A. UCL, FAL AND CLRA

The UCL, FAL and CLRA are California consumer protection statutes. The UCL makes actionable any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The FAL makes it unlawful to make or disseminate any statement concerning property or services that is "untrue or misleading…." Id. § 17500. The CLRA likewise prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ.Code § 1770. Claims made under these statutes are governed by the "reasonable consumer" test which focuses on whether "members of the public are likely to be deceived." Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008) (citing Freeman v. Time, Inc., 68 F.3d 285, 289 (9th Cir. 1995)).

The question of whether a business practice is deceptive generally presents a question of fact not suited for resolution on a motion to dismiss. See Williams, 552 F.3d at 938. However, in certain instances, the court may be in a position to consider the viability of the alleged consumer law claims based on its review of the product packaging. See Brockey v. Moore, 107 Cal.App.4th 86, 100, 131 (2003) ("the primary evidence in a false advertising case is the advertising itself"). Thus, where a court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate. See Sugawara, 2009 WL 1439115 at *3-4 (finding that the packaging for Cap'n Crunch cereal and its use the term "Crunch Berries" was not misleading, as a matter of law); Videtto v. Kellogg USA, 2009 WL 1439086 at *2 (E.D. Cal., May 21, 2009) (dismissing UCL, FAL and CLRA claims based on allegations that consumers were misled into believing that "Froot Loops"

1  cereal contained "real, nutritious fruit"); McKinnis v. Kellogg USA, 2007 WL 4766060 at *3-4
2  (C.D. Cal., May 21, 2007) (same).
3       In the instant case, the FAC alleges that members of the public are likely to be deceived
4  into believing that Cap'n Crunch derives nutrition from actual fruit by virtue of the reference to
5  "Berries" and because the Crunch Berries allegedly are "shaped to resemble berries." FAC
6  ¶¶ 12-13; Pl.'s Opp'n at 6. Nonsense. It is obvious from the product packaging that no
7  reasonable consumer would believe that Cap'n Crunch derives any nutritional value from
8  berries. As an initial matter, the term "Berries" is not used alone, but always is preceded by the
9  word "Crunch," to form the term, "Crunch Berries." The image of the Crunch Berries, which
10 is "ENLARGED TO SHOW TEXTURE," shows four cereal balls with a rough, textured
11 surface in hues of deep purple, teal, chartreuse green and bright red. FAC ¶ 13, Ex. A; RJN Ex.
12 A. These cereal balls do not even remotely resemble any naturally occurring fruit of any kind.
13 There are no representations that the Crunch Berries are derived from real fruit nor are there
14 any depictions of any fruit on the cereal box. To the contrary, the packaging clearly states that
15 product is a "SWEETENED CORN & OAT CEREAL." In short, no reasonable consumer
16 would be deceived into believing that Cap'n Crunch "has some nutritional value derived from
17 fruit." FAC ¶ 12.
18      Plaintiff's attempt to analogize this case to Williams is entirely misplaced. In that case,
19 the defendant, Gerber Products, Inc. ("Gerber"), manufactured a product known as "Fruit Juice
20 Snacks" as part of its "Graduates for Toddlers" product line. Plaintiffs filed suit against Gerber
21 under the UCL, FAL and CLRA claiming, inter alia, that the words "Fruit Juice," juxtaposed
22 alongside images of fruits such as oranges, peaches, strawberries, and cherries, was deceiving,
23 given that the product contained no fruit juice from any of the fruits pictured on the packaging.
24 On appeal, the Ninth Circuit reversed the district court's dismissal of the action. Gerber, 552
25 F.3d at 939. In reaching its decision, the court highlighted a number of features of the
26 packaging that could likely deceive a reasonable consumer. Id. In particular, the court noted
27 that the "[t]he product is called 'fruit juice snacks' and the packaging pictures a number of
28 different fruits, potentially suggesting (falsely) that those fruits or their juices are contained in

- 6 -

1  the product." Id. In addition, the packaging falsely represented that the product "was made
2  with 'fruit juice and other all natural ingredients'" and was "just one of a variety of nutritious
3  Gerber Graduates foods and juices that have been specifically designed to help toddlers grow
4  up strong and healthy," all of which added to the potential deception. Id.

5  None of the attributes which the Williams court found compelling is present in this case.
6  Unlike the packaging for Gerber's Fruit Juice Snacks, there are no pictures or images of any
7  berries or any other fruit depicted on the Cap'n Crunch cereal box. Nor are there any
8  representations that the cereal is made with real fruit or is nutritious. Rather, the Crunch
9  Berries – which are not fruit – are described as a "SWEETENED CORN & OAT CEREAL"
10 and shown as brightly-colored balls of cereal that no reasonable consumer would believe are
11 made from real berries. In sharp contrast to the Fruit Juice Snacks at issue in Williams, there
12 simply is nothing in the Cap'n Crunch packaging that would lead a reasonable consumer to
13 believe that the brightly-colored cereal balls depicted on the product cover and described as
14 Crunch Berries are, in fact, made or derived from real berries or fruit.

15 Equally uncompelling is Plaintiff's attempt to show potential deception by pointing to a
16 comment made by a trademark examiner over 40 years ago in 1967 that: "The word BERRIES
17 is considered either merely descriptive or deceptively misdescriptive of goods here and should
18 be disclaimed from the mark." FAC Ex. B at 17. Though not entirely clear, Plaintiff appears
19 to suggest that the examiner's isolated remark shows that it is plausible that a reasonable
20 consumer could also be deceived. Pl.'s Opp'n at 3; FAC ¶ 20. Plaintiff fails to cite any
21 authority for the proposition that a comment of a single trademark examiner made over forty
22 years ago, in a different context, is sufficient to demonstrate that members of the public are
23 likely to be deceived. Moreover, it is apparent that the examiner's comment was not deemed
24 compelling given that Quaker Oats' trademark application for Cap'n Crunch was approved in
25 1968, and has been renewed numerous times since then. (FAC Ex. B at 7, 14, 22, 24.)

26 In sum, Plaintiff has failed to establish that that a reasonable consumer would likely be
27 deceived into believing that Cap'n Crunch derives some of its nutritional value from fruit.
28 Therefore, the Court grants Defendant's motion to dismiss Plaintiff's first, second and sixth

1 causes of action under the UCL, FAL and CLRA, respectively.

### B.  INTENTIONAL MISREPRESENTATION

"The elements of intentional misrepresentation, or actual fraud, are: (1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage."  Anderson v. Deloitte & Touche, 56 Cal.App.4th 1468, 1474 (1997). Plaintiff's third cause of action for intentional misrepresentation is based on the same theory as his statutory claims; to wit, that the Cap'n Crunch's packaging is "deceptive in that the Product contains no fruit content of any nutritional value."  (FAC ¶ 62.)  As discussed, the packaging does not misrepresent that the cereal contains or is derived from fruit.  "Crunch Berries" is nothing more than a fanciful name for the "SWEETENED CORN & OAT CEREAL" depicted on the product cover of the cereal box.  Any reliance by a consumer on the use of the term "CRUNCH BERRIES" implies that real berries or fruit are contained in the cereal would neither be reasonable nor justifiable.

### C.  BREACH OF EXPRESS AND IMPLIED WARRANTY

Plaintiff's fourth and fifth causes of action are for breach of express and implied warranty, respectively.  The essential elements of a warranty cause of action are:  (1) there was a sale of goods; (2) defendant expressly or impliedly warranted the goods sold; (3) there was a breach of warranty; (4) the breach of warranty caused plaintiff to suffer injury, damage, loss or harm; and (5) the plaintiff gave defendant timely notice of the breach of warranty.  Scott v. Metabolife Int'l, Inc., 15 Cal.App.4th 404, 415-16 (2004).  According to Plaintiff, Defendant allegedly warranted that Cap'n Crunch "contains berries" and "was a substantially fruit-based product deriving nutritional value from fruit."  (FAC ¶¶ 69, 71.)  This claim is frivolous.  No such claim is made expressly or impliedly anywhere on the Cap'n Crunch packaging or marketing material cited by Plaintiff.

### D.  LEAVE TO AMEND

Where a district court dismisses a claim, leave to amend generally should be granted unless amendment would be futile or when it is sought in bad faith.  See Ventress v. Japan

Airlines, 603 F.3d 676, 680 (9th Cir. 2010). Applying that standard, the Court, in its discretion, finds that leave to amend is not warranted on both of those grounds. As discussed, there is nothing in the packaging or marketing of Cap'n Crunch that would in any way deceive a reasonable consumer into believing that the cereal contains or derives nutritional value from real fruit. No amendment can cure that deficiency. Alternatively, Plaintiff's request for leave to amend is denied on the grounds of bad faith. This is Plaintiff's counsel's third attempt to pursue a class action against PepsiCo based on the same inherently flawed theory of liability. Instead of pursuing further relief in the Central and Eastern District actions, Plaintiff's counsel simply abandoned those cases, undoubtedly aspiring to obtain a favorable result in another District. The Court will not countenance such forum shopping.

## IV. CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT Defendant's Motion to Dismiss is GRANTED. All causes of action alleged in the FAC are dismissed with prejudice. This Order supersedes Docket 25, which shall be stricken. The Clerk shall close the file and terminate any pending matters.

IT IS SO ORDERED.

Dated: July 1, 2010

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge